UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

| | |
|---|---|
| THOMAS F. GRAVES, | ) |
| Plaintiff, | ) ) ) |
| v. | ) **COMPLAINT** |
| HUDSON ROCKY MOUNT ACQUISITION, LLC d/b/a ROCKY MOUNT TOYOTA, | ) Civil Action No.: 5:21-cv-74 ) Jury Trial Demanded ) ) |
| Defendant. | ) ) |

NOW COMES PLAINTIFF, THOMAS F. GRAVES, by and through undersigned counsel, and complains against Defendant Rocky Mount Toyota, Inc. as follows:

## INTRODUCTION AND NATURE OF THE CASE

Plaintiff brings this action against Defendant for racial discrimination in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, and the Civil Rights Act of 1991, 42 U.S.C. § 1981. Plaintiff also brings this action against Defendant for violations of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 621 *et seq*. Further, Plaintiff asserts that Defendant wrongfully discharged him in violation of North Carolina public policy. Plaintiff seeks all available remedies including but not limited to, compensatory, punitive, and liquidated damages, as well as available equitable relief pursuant to 42 U.S.C. § 2000e-5(f)-(k), 42 U.S.C. § 1981a, 29 U.S.C. § 626(b) and as otherwise authorized pursuant to law.

## JURISDICTION AND VENUE

1. This Court has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1331, as the claims for relief asserted herein arises under federal law, and under 28 U.S.C.

§ 1343(a)(4), as the claims herein seek relief under acts of Congress providing for the protection of civil rights.

2. This Court has supplemental jurisdiction over Plaintiff's related state law claims pursuant to 28 U.S.C. § 1367(a).

3. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

4. Plaintiff Thomas F. Graves ("Mr. Graves") is a citizen and resident of Wake County, North Carolina. Mr. Graves, a 63-year-old, African American male, was employed by Defendant Hudson Rocky Mount Acquisition, LLC d/b/a Rocky Mount Toyota from March 2, 2020 until Defendant terminated him on September 15, 2020. At all times relevant hereto, Plaintiff constituted an "employee" pursuant to all applicable statutes.

5. Defendant Hudson Rocky Mount Acquisition, LLC d/b/a Rocky Mount Toyota. ("Defendant" or "RMT"), is a domestic corporation organized and existing under the laws of the State of North Carolina with its principal office located at 225 Seven Farms Drive, Suite 200, Charleston, SC 29492. Defendant maintains its registered office in Wake County, North Carolina.

6. Defendant operates its business, under the assumed business name of "Rocky Mount Toyota," which is located at 943 N. Wesleyan Boulevard, Rocky Mount, Nash County, North Carolina 27804. At all times relevant hereto, RMT has continuously employed at least 20 employees.

7. At all relevant times, Defendant has continuously constituted an employer engaged in an industry affecting commerce in accordance with sections 701(b), (g), and (h) of Title VII, 42 U.S.C. §§ 2000e (b), (g), and (h) and pursuant to the ADEA.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

8. Mr. Graves signed and filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") on October 23, 2020, alleging violations of Title VII. On November 4, 2020, Mr. Graves submitted an Amended Charge, alleging that Defendant's also violated the ADEA.

9. The EEOC issued Mr. Graves a Notice of Right to Sue on November 13, 2020.

10. Mr. Graves complied with all deadlines related to the investigation of his formal administrative complaint.

11. All conditions precedent to the institution of this lawsuit have been fulfilled.

## FACTUAL ALLEGATIONS

12. Prior to joining RMT, Mr. Graves possessed more than twenty (20) years of experience in the automotive sales and finance industry. In 2003, Mr. Graves attended an automotive finance training program and has worked in automotive finance positions ever since. While working for a previous automobile dealership, Mr. Graves was a two-time winner of the EPPIE (Elite Partners in Profit with Integrity & Ethics) Award, which is awarded only to the top finance producers for all Hendrick Automotive Group dealerships located in the United States.

13. Defendant hired Mr. Graves as a Financial Manager at RMT on or about March 2, 2020.

14. From his date of hire through his termination, Mr. Graves was one of three Finance Managers employed at RMT; however, he was the only African American. Further, RMT employed twelve (12) mangers across its three departments (i.e., finance, sales, or service), and Mr. Graves was the <u>only</u> African American manager of <u>any</u> of RMT department.

15. To incentivize its employees, Defendant set monthly goals for its finance managers and if the employee met or exceeded his goals, he received a performance-based bonus. Mr. Graves consistently met and exceeded his monthly goals. He was a top finance management performer for RMT and consistently placed in the top 15 finance managers based on performance among Hudson Automotive Group's twenty-six (26) dealerships, which consisted of approximately 70 finance managers.

16. In addition to his duties as a finance manager, Mr. Graves spent his spare time at work training new sales associates. Mr. Graves had noticed that newly hired associates had not received training, so he asked Turner if he could instruct them on automotive industry sales tactics and strategies that he had learned over the course of his 20+ year career. Many of the sales associates approached Mr. Graves and told him how helpful and productive his training sessions were.

17. Mr. Graves had no performance issues while at RMT and Defendant never reprimanded or disciplined him orally or in writing.

18. On September 15, 2020, much to his surprise, Defendant terminated Mr. Graves. RMT's General Manager, Tre Turner, told Mr. Graves that it had "nothing to do with [his] performance," but that RMT did not have enough business to justify employing three (3) finance managers.

19. Turner's explanation did not make sense to Mr. Graves because he knew, based on his experience, it would be nearly impossible to operate the finance department with only two finance managers.

20. One week after he was terminated, Mr. Graves was informed by a former RMT co-worker that Defendant had replaced him with Chet Lyndon, a 35-year-old white male who

possessed much less experience in the automotive sales and finance industry, as compared to Mr. Graves.

21. As is set forth herein, Defendant intentionally discriminated against Mr. Graves because of his race and age in violation of Title VII, 42 U.S.C. § 1981 and the ADEA.

22. As a direct result of Defendant's unlawful discrimination, Mr. Graves suffered and continues to suffer damages. Defendant is liable to Mr. Graves for all damages and remedies available to him under the law, including, but not limited to, front pay, back pay, compensatory damages, punitive damages, costs, and attorneys' fees.

**FIRST CLAIM FOR RELIEF**
**Racial Discrimination in Violation of Title VII**
**of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* and the Civil Rights Act of 1991, 42 U.S.C. § 1981**

23. Plaintiff reiterates and realleges each and every paragraph above and incorporates each hereto as if set forth fully herein.

24. As an African American, Mr. Graves is a member of a protected class, and thus, satisfies the threshold requirement.

25. Mr. Graves was performing his job at RMT satisfactorily because, by all accounts, Mr. Graves excelled at his job as a Finance Manager. He consistently produced some of the highest finance numbers not only at the local RMT dealership, but also across Hudson Automotive Group's twenty-six (26) dealerships.

26. Mr. Graves suffered an adverse employment action when RMT fired him on September 15, 2020.

27. Within <u>one week</u> of Mr. Graves' termination, Defendant hired Lyndon, a 35-year-old white male, as Mr. Graves' replacement.

5

28. Though Mr. Graves performed his job at a level that exceeded Defendant's expectations, RMT nevertheless terminated him under the false pretense that RMT had insufficient business to support three (3) Finance Managers.

29. Furthermore, when Mr. Graves was fired, Defendant admitted Mr. Graves was not being terminated was a result of his performance.

30. RMT treated a member outside of Mr. Graves' protected class of race more favorably when RMT replaced him with Lyndon. After Mr. Graves' termination, Defendant had no African American managers on staff at RMT. In fact, all twelve of RMT's department managers were white.

31. In terminating Mr. Graves, Defendant engaged in unlawful employment practices in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1) and 42 U.S.C. § 1981. Specifically, Defendant, through its managerial staff, discriminated against Mr. Graves by terminating him, lying to him about the reason for his termination, and replacing him with a substantially younger white male within one week of his termination.

32. By terminating Mr. Graves, lying to him, and replacing him with Lyndon, Defendant, through its managerial staff, acted intentionally, maliciously and with reckless indifference to his federally protected right to be free from racial discrimination.

33. Defendant's conduct, by and through its managers, deprived Mr. Graves of equal employment because of his race.

34. It was reasonably foreseeable that Mr. Graves would incur damages, including but not limited to lost wages, as a result of RMT unlawfully terminating him.

35. As a direct and proximate result of Defendant's violations of Title VII and 42 U.S.C. § 1981 as described herein, since his termination from RMT, Mr. Graves has suffered and

continues to suffer damages, including lost wages, lost benefits, emotional distress, and other non-pecuniary damages.

36. As a result of all of Defendant's acts and omissions as set forth herein, Defendant is liable to Mr. Graves for all damages sustained due to RMT's unlawful termination and is entitled to all remedies available to him authorized by law including, but not limited to, front pay, back pay, compensatory damages, punitive damages, costs, attorneys' fees, etc.

### SECOND CLAIM FOR RELIEF
### Wrongful Discharge in Violation of
### North Carolina Public Policy

37. Plaintiff reiterates and realleges each and every paragraph above and incorporates each hereto as if set forth fully herein.

38. As set forth herein, Defendant unlawfully discriminated against Mr. Graves because of his race, in violation of Title VII and 42 U.S.C. § 1981. *See* Paragraphs 24-36, *supra*.

39. Additionally, Defendant's acts, as described herein above, contravene and violate the public policy of the State of North Carolina as set forth in North Carolina's Equal Employment Practices Act (EEPA). The EEPA declares that it is the public policy of this State to "protect and safeguard the right and opportunity of all persons to seek, obtain and *hold employment* without discrimination or abridgement on account of … *race*…." *See* N.C. Gen. Stat. § 143-422.2 (emphasis added).

40. As set forth above in Paragraphs 24-36, *supra*, Defendant engaged in unlawful employment practices in violation of North Carolina law. Specifically, Defendant, through its managerial staff, discriminated against Mr. Graves by terminating him, lying to him about the reason for his termination, and replacing him with a substantially younger white male within one week of his termination, thereby denying him the opportunity to "hold employment without

7

discrimination…on account of race" in violation of North Carolina public policy as codified in N.C. Gen. Stat. § 143-422.2. Plaintiff's termination, therefore, constitutes wrongful discharge under North Carolina law.

41. Mr. Graves is entitled to compensation for lost wages, lost benefits, front pay, back pay, economic losses and any other applicable damages pursuant to North Carolina law.

**THIRD CLAIM FOR RELIEF**
**Age Discrimination in Violation of the ADEA, 29 U.S.C. § 621** *et seq.*

42. Plaintiff reiterates and realleges each and every paragraph above and incorporates each hereto as if set forth fully herein.

43. At all times relevant, Mr. Graves constituted an "employee" within the meaning of the ADEA.

44. At all times relevant, Defendant constituted an "employer" within the meaning of the ADEA.

45. At all times relevant to this Complaint, Mr. Graves was 63 years old, and therefore meets the threshold requirement of being at least 40 years old.

46. Mr. Graves was more than qualified to work as a Finance Manager at RMT. He has worked in the automotive sales industry for more than 20 years. During his career, Mr. Graves had always been a top producer among automotive finance managers and served as Finance Director for several years at an automobile dealership in Raleigh, North Carolina.

47. During his tenure at RMT, Mr. Graves performed his job in accordance with, if not above, Defendant's legitimate expectations. He consistently produced some of the highest finance numbers at RMT and was in the top 15 finance managers among Hudson Automotive Group's twenty-six (26) dealerships. Further, Mr. Graves took on responsibilities outside of his job description in order to improve the dealership.

48. Though Mr. Graves was highly qualified and performed his duties as Finance Manager at RMT above and beyond Defendant's expectations, he nevertheless suffered an adverse employment action when Defendant terminated him on September 15, 2020 under the false pretense that RMT had insufficient business to support three (3) finance managers.

49. Furthermore, when terminated, Defendant admitted that Mr. Graves was not fired as a result of his performance.

50. Within days of Mr. Graves' termination, Defendant replaced him with Lyndon, who, at only 35-years-old, was substantially younger than Mr. Graves.

51. Defendant treated Mr. Graves' less favorably than a member outside of his protected class of age when RMT replaced him with 35-year-old Lyndon.

52. In terminating Mr. Graves, Defendant engaged in unlawful employment practices in violation of the ADEA. Specifically, Defendant, through its managerial staff, discriminated against Mr. Graves, by terminating him, lying to him about the reason for his termination and, within one week, replacing him with Lyndon, a substantially younger and less qualified individual.

53. By terminating Mr. Graves, lying to him, and replacing him with Lyndon, Defendant, through its managerial staff, acted intentionally, maliciously and with reckless indifference to Mr. Graves' federally protected right to be free from age discrimination.

54. Defendant's conduct, by and through its managers, deprived Mr. Graves of equal employment because of his age.

55. It was reasonably foreseeable that, as a result of his unlawful termination, Mr. Graves would incur damages, including but not limited to lost wages.

56. As a direct and proximate result of Defendant's violation of the ADEA as described herein, since his termination, Mr. Graves has suffered, and continues to suffer, monetary and/or

9

Case 5:21-cv-00074-BO   Document 1   Filed 02/11/21   Page 9 of 11

economic damages, including, but not limited to, loss of past and future income, compensation, and benefits, for which Plaintiff is entitled to an award of damages, attorney's fees, and costs.

57. Further, the foregoing conduct constitutes a willful violation of the ADEA within the meaning of 29 U.S.C § 626(b) and, as a result, Mr. Graves is entitled to liquidated damages.

## JURY DEMAND

Plaintiff demands a trial by jury of the claim asserted in this Complaint.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully prays the Court for judgement against Defendant to the full extent permitted by 29 U.S.C. § 794a(a)(1), 42 U.S.C. § 2000e-5(f)-(k) and 42 U.S.C. § 1981a, 29 U.S.C. § 626(b) including but not limited to, the following:

1. Judgment in Plaintiff's favor, determining that Defendant's actions and conduct towards and relating to Plaintiff violated the Title VII of the Civil Rights Act of 1964, the Civil Rights Act of 1991 and the ADEA.

2. Award Plaintiff back pay of all monetary damages incurred, including but not limited to back pay, front pay, interest, and benefits.

3. Award Plaintiff damages for mental anguish, emotional distress, and other non-pecuniary damages.

4. Award Plaintiff punitive damages as a result of the intentional unlawful actions and conduct of Defendant under the Civil Rights Act of 1964, the Civil Rights Act of 1991.

5. Award Plaintiff liquidated damages as a result of Defendant's willful violation of the ADEA in an amount to be determined at trial.

6.  Award Plaintiff the costs, disbursements, expenses, reasonable attorneys' fees, and expert witness fees incurred by Plaintiff in filing and prosecuting this action pursuant to 42 U.S.C. § 1981a and as may be authorized by any other applicable federal laws;

7.  For an award of pre- and post-judgment interest to Plaintiff on all damages; and

8.  For all other, further relief as this Court deems just and appropriate.

This the 11th day of February, 2021.

Respectfully submitted,

/s/ Lindsey A. Bullard
Lindsey A. Bullard, N.C. Bar No. 46664
Dawn T. Mistretta, N.C. Bar No. 31691
STRAUCH GREEN & MISTRETTA, P.C.
1752 Heritage Center Drive, Suite 101
Wake Forest, NC 27587
Telephone: (919) 278-7453
Facsimile: (855) 876-8893
dmistretta@gmlawyers.org
lbullard@gmlawyers.org
*Counsel for Plaintiff*